UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOFOROS G. POLITIS, § | | |
| *Plaintiff*, § | | |
| § | | |
| vs. § | CIVIL ACTION H-08-2595 | |
| § | | |
| SARAH J. NOBLIN, AND EDWARD YEOMANS, § | | |
| *Defendants*. § | | |

**Opinion on Summary Judgment**

This wrongful birth case is before the court on defendants' motions for summary judgment (Dkts. 50,53)[1]. All parties have consented to proceed before this magistrate judge. (Dkts.31, 75). Because there are no genuine issues of material fact on critical elements of plaintiff's claim, summary judgment will be granted in favor of defendants.

Before explaining that ruling, the court pauses to consider defendants' motions to dismiss. Defendant Edward Yeomans moves to dismiss based on plaintiff's failure to timely serve an expert report as required by Texas Civil Practice & Remedies Code § 74.351 (Dkt. 68). Yeomans concedes that a majority of federal district courts have held that this is a state procedural rule that does not apply to a federal court exercising diversity jurisdiction. Dkt. 68, at n.1; *See, e.g., Sauceda v. Pfizer Inc.*, Civil Action No. C-07-06, 2007 WL 87660 *2

---

[1] The court previously converted Yeoman's motion to dismiss (Dkt. 53) to a motion for summary judgment pursuant to F.R.C.P. 12(d) and allowed plaintiff additional time to respond (Dkt. 57).

(S.D. Tex. Jan. 9, 2007).  Yeomans' motion to dismiss for failure to comply with § 74.351 is denied.

Defendant Sarah Noblin moves to dismiss (Dkt. 49) pursuant to Texas Civil Practice & Remedies Code § 101.106, and for discovery abuse under Federal Rule of Civil Procedure 37(d).  This court previously rejected Noblin's election of remedies argument based on § 101.106 (Dkt. 41).  While reconsideration of that ruling might be in order in light of additional authority which was not presented in Noblin's original motion,[2] the issue is rendered moot by the summary judgment ruling.  For the same reason, it is unnecessary to decide whether dismissal is an appropriate sanction for the plaintiff's failure to appear for deposition under Rule 37.  The motion to dismiss is denied as moot.

## Summary Judgment Standard

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).  Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party.  *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001).  "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

---

[2]     *See Mission Consol. Independent School Dist. v. Garcia,* 253 S.W.3d 653 (Tex. 2008).

2

If the evidence presented to rebut the summary judgment is not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255.

## Facts

The following facts are taken largely from Ms. Politis's medical records, which are uncontroverted on this summary judgment record. On April 24, 2006, Noblin, a genetics counselor, met with Iris Politis to discuss her pregnancy in light of her advanced maternal age (40 years old). In particular, Ms. Politis wanted to know whether her baby was affected with a serious chromosome disorder.[3] According to the consultation notes, Ms. Politis indicated that abortion was not an option even if an abnormality were shown.[4]

That same day, Dr. Yeomans performed a successful amniocentesis on Ms. Politis, and the amniotic fluid was sent to a clinical laboratory for analysis. The lab issued its written report on May 9, 2006. The amniocentesis revealed a chromosome abnormality described as "a 13;14 Robertsonian translocation." This meant that, instead of the usual 46 chromosomes normally present in each person, the baby had 45 total chromosomes, including a normal number 13 chromosome, a normal number 14 chromosome, and a chromosome

---

[3]   Dkt. 68-2, April 24, 2006 Genetic Counseling Consultation Summary.

[4]   Plaintiff disagreed with his wife, and indicated that abortion would be an option. *Id.*

composed of one number 13 chromosome and one number 14 chromosome stuck together. This particular condition, also referred to as "balanced translocation"because there is no missing or extra genetic material, is very common. Carriers of such translocations do not generally experience health problems, though they are at increased risk of having children with genetic abnormalities or producing pregnancies that result in miscarriage.[5]

Noblin received notice of these results via voice mail that same day, May 9. Ms. Politis was called about these test results on May 11, 2006. The very next day she came in to discuss those results with Noblin and Dr. Yeomans. They recommended a chromosome analysis on her own blood, which was drawn that same day. On May 24 the lab report confirmed that Ms. Politis had exactly the same chromosomal translocation as her baby. Noblin reported those results to Ms. Politis by telephone on June 8, 2006. Ms. Politis advised that she could not come in to discuss the genetic findings further, so it was agreed that a letter would be sent providing further information.

For reasons left unexplained, that letter was not sent until January 5, 2007, nearly four months after Ms. Politis's son was born.[6] The letter, signed by both Noblin and Yeomans, begins with an apology for the delay, and then proceeds to review the amniocentesis results, as well as a detailed explanation of chromosome structure and the reproductive risks associated with balanced translocation. The letter makes clear that this information was

---

[5]   Dkt. 68-2, January 5, 2007 letter from Noblin and Yeomans to Ms. Politis.

[6]   *Id.*

4

previously discussed with Ms. Politis in "our conversations together."[7] The evident purpose of the letter was to memorialize these findings for future reference. In that same vein, the letter concludes with a recommendation that her three sons also undergo blood chromosome tests, and that they should all seek genetic counseling before any future pregnancies.

## Analysis

Plaintiff Christoforus G. Politis alleges that the individual defendants, Sarah J. Noblin and Edward R. Yeomans, M.D., negligently failed to timely report amniocentesis results concerning his pregnant wife,[8] resulting in the "wrongful birth" of their son with a genetic impairment. This type of healthcare liability claim was recognized by the Texas Supreme Court in *Nelson v. Krusen,* which held that "parents may recover the expenses reasonably necessary for the care and treatment of their child's impairment from a physician who had negligently failed to inform parents of the risk of that impairment." 678 S.W.2d 918, 924-25 (Tex. 1984). Defendants are entitled to summary judgment on Politis's claim for several reasons.

First, there is no evidence of negligence here. The uncontroverted medical records indicate that Ms. Politis was informed about the amniocentesis results on May 11, 2006, two days after the lab report was prepared. This is confirmed by the fact that she came in the next day to meet with Noblin and Yeomans, and, on their recommendation, submitted her own

---

[7] *Id*.

[8] Ms. Politis is not a party to this case (Dkt. 41).

blood sample for chromosome testing. While there is no record or recording of exactly what Ms. Politis was told during this visit, there is no reason to believe that she was not provided substantially the same information that was memorialized in the defendants' January 5, 2007 letter. Notably, Ms. Politis has not come forward to challenge or contradict this version of events. As far as this summary judgment record shows, Ms. Politis was timely and duly informed about her unborn child's genetic condition and its attendant risks.

Moreover, there is no evidence that Politis has incurred *any* expenses for the care and treatment of his son's genetic impairment. Although Politis in his complaint alleges that his son has been "sick" and that a blood test showed "some problems with the baby's liver," there is literally nothing in the record tying these problems to his chromosome anomaly. Politis points to some hearsay information from a Dr. Kenneth F. Trofatter, Jr. that he printed from a website, but Dr. Trofatter's opinions are not based on a review of the specific genetic test or child involved in this case.[9] Whatever Dr. Trofatter's qualifications or reputation in the field of genetics, his general opinions are not relevant or admissible evidence regarding the specific genetic condition of Politis's son. Tellingly, the child is now three years old, and yet there is no evidence of any medical expenses incurred to date for treatment related to the balanced translocation. Indeed, there is no evidence that Politis's child suffers from any genetic impairment for which medical care or treatment is necessary; according to Ms. Politis

---

[9] In his motion to strike all of defendants' experts on the grounds that they are biased in favor of defendants, Politis confirms that Dr. Trofatter does not know plaintiff and does not know his report is being used in this case. (Dkt. 55).

medical records, this particular balanced translocation is "very common," and "generally not associated with health problems" for the carrier. The increased health risks arise only in the event of future pregnancy, which of course is unrelated to the child's current health.

Finally, Politis has presented no evidence of causation. Despite his allegation that had he known about the balanced translocation earlier he would have considered abortion, there is no evidence that Ms. Politis would have aborted the fetus due to the balanced translocation, an "impairment" she herself had all her life without even knowing it. In fact, when asked at the time of the testing, Ms. Politis indicated that interruption of the pregnancy was not an option.

**Conclusion and Order**

For these reasons,[10] Noblin's and Yeomans's motions to dismiss are denied and motions for summary judgment are granted. Christoforos Politis's claims in this case are denied in their entirety with prejudice.

The court will issue a separate final judgment.

Signed at Houston, Texas on November 9, 2009.

Stephen Wm Smith
United States Magistrate Judge

---

[10] Defendants have asserted additional grounds for dismissal in their motions, including the statute of limitations, that are unnecessary to resolve in light of this ruling on the merits.